# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JAMES NORQUAY,**

    Petitioner,

-vs-                        Case No. 15-C-792

**MARC CLEMENTS, Warden,
Dodge Correctional Institution,**

    Respondent.

## DECISION AND ORDER

James Norquay was convicted by a Green County jury of one count of second degree sexual assault of a child, three counts of sexual assault by a foster parent, and two counts of incest with a child. Norquay was given concurrent 35-year sentences consisting of twenty years of initial confinement and fifteen years of extended supervision. In state court post-conviction proceedings, Norquay pressed claims for ineffective assistance of counsel. Norquay's conviction was upheld in a written opinion by the Wisconsin Court of Appeals, and the Wisconsin Supreme Court denied review. Norquay petitions for relief under 28 U.S.C. § 2254.

The appeals court opinion includes the following factual summary:

> This matter arises out of allegations of sexual assault made by a foster child. The child [referred to as HN] was placed in the Norquays' home by Lafayette County Human Services on November 6, 2008. The placement was troubled from the start,

but Norquay and his wife Lori eventually adopted the child on November 17, 2009.

The child was removed from the home following an incident on January 2, 2010. Norquay's wife Lori had purchased a pink Playboy shirt for herself, prompting a temper tantrum by the child, who felt she should also have been allowed one. After Lori called 911, the child made comments such as, "[Y]ou don't even know what dad and I are doing." When police arrived, an officer heard the child say as she passed Norquay and went into her room, "Just tell them the truth, dad." When questioned by police, the child stated that she was in a sexual relationship with Norquay.

The child claimed that the last sexual incident occurred on December 25, 2009, when she and Norquay were working in the alpaca shed and "sex happened, not penis to vagina sex, but I was touching him, and then there was … ejaculation on my hand, and I wiped it on my overalls." A search warrant retrieved coveralls with visible semen stains. DNA analysis determined that Norquay was the source of the semen, although Norquay's wife insisted that the semen was planted by the victim.

The victim recounted numerous other specific sexual incidents involving penetration with finger and penis, masturbation, and oral sex. She also recounted details of Norquay's body and sexual preferences, including Norquay's predilection for nipple stimulation, and thong or G-string underwear. She also stated that Norquay had two tattoos, including one on his lower pelvic region. Another notable detail was that Norquay shaved his pelvic region.

An exchange of e-mails occurred between the victim and Norquay on October 2, 2009. Among other things, the victim wrote, "im still have jumbled feelings im sure you do to [sic]" and '[I] really just want you to JUST be my dad thats it … no more no less." The last sentence of the last e-mail from Norquay states: "Will you please delete these e-mails and then delete them from your deleted items?"

*State of Wis. v. Norquay*, 2013AP526-CR, at ¶¶2-6 (Wis. Ct. App. Nov. 20, 2014).

The court of appeals noted the familiar two-part analysis for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, petitioner needed to show deficient performance, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Second, petitioner was required to show that he was prejudiced by the deficient performance. *Id.* at 687, 694.

This standard is deferential on its own, but even more so in the context of federal habeas relief, which, pursuant to the Antiterrorism and Effective Death Penalty Act, "shall not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, …; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). In other words, the Court applies "doubly deferential judicial review," and "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

In this case, however, the state appeals court presumed deficient performance and only addressed prejudice. Since the "last reasoned opinion" did not address deficient performance, this prong of *Strickland* is subject to *de novo* review. *Thomas v. Clements*, 789 F.3d 760, 766-67 (7th Cir. 2015). Respondent preserves the argument, advanced by Judge Easterbrook's concurrence in the denial of rehearing *en banc*, that AEDPA review should apply to both prongs of *Strickland* even if the last reasoned state court opinion addressed only one. *Thomas v. Clements*, 797 F.3d 445, 447 (7th Cir. 2015) ("Why should two components of ineffective assistance be separate claims for the purpose of § 2254(d)? They are distinct *issues*, certainly, but why distinct *claims*?") (emphasis in original); *see also Atkins v. Zenk*, 667 F.3d 939, 944 (7th Cir. 2012). In any event, the Court finds, as did the state court, that this case can be resolved on the prejudice prong.

Norquay argues that the state court's ruling on prejudice also is not entitled to deference because the state court did not apply the correct legal standard. The court stated that prejudice "requires showing that counsel made errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *State v. Norquay*, at ¶ 9. This is an almost verbatim quote from *Strickland*, 466 U.S. at 687. Reliability, however, is not the ultimate inquiry; instead, the petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

- 4 -

been different." *Mosley v. Atchison*, 689 F.3d 838, 850 (7th Cir. 2012) (quoting *Strickland* at 694). Even so, "occasional references to reliability do not undermine [a state court's] holding. *Strickland* itself states that to show prejudice one must demonstrate 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' Furthermore, what is important is that the overall reasoning is consistent with *Strickland*." *Eckstein v. Kingston*, 460 F.3d 844, 851 (7th Cir. 2006) (internal citations omitted). As in *Eckstein*, the state court's reasoning is consistent with *Strickland*, and even if it wasn't, *de novo* review under the correct standard leads the same conclusion – no "reasonable probability of a different result."

The theory of Norquay's defense was that HN had a history of lying and making false allegations of sexual assault, usually triggered by a stressful event where she thought she was being treated unfairly. Norquay argues that his attorney was ineffective for failing to present testimony from his wife, Lori, concerning her threat to HN, made in the month before HN's allegations against Norquay, that she could put HN "back in the system." The problem with this argument is that the jury already knew about HN's history of lying and false assault allegations. Evidence regarding a supposed "triggering event" would not have created a reasonable probability of a different result given the evidence that corroborated HN's allegations, such as DNA evidence

- 5 -

and HN's knowledge of Norquay's tattoos, shaved groin, and sexual proclivities. Norquay argues that Lori's threat put HN on alert and caused her to plant the DNA on her overalls. Norquay's theory that HN planted the DNA evidence, which the court of appeals correctly rejected as "farfetched," is not more believable simply because of the timing of Lori's threat.

Norquay also argues that his trial counsel was ineffective for failing to ensure that HN's friend, KH, testified at trial. Norquay's attorney and the State stipulated that HN told KH that she had a make-believe son named Gunner and had given KH a scrapbook containing pictures to illustrate as much. Norquay claims that live testimony would have been more detailed and compelling. The Court doesn't see how. Moreover, the stipulation prevented more damaging evidence from being introduced at trial: KH's statement to law enforcement about what HN told her about the assaults. *See State v. Norquay*, at ¶ 17.

Finally, Norquay argues that his counsel was ineffective for failing to explore an innocent explanation for the damaging email exchange between himself and HN, that being HN's assertion that she had been "raped by a black boy" while on respite care, resulting in an emotional family meeting the day before the email exchange. This explanation does not account for Norquay telling HN to delete the emails.

In connection with this Order, the Court must decide whether to issue

- 6 -

a certificate of appealability, which involves an inquiry into whether reasonable jurists could debate whether the petition should be resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). One issue that might deserve further review is whether AEDPA applies to both prongs of the *Strickland* inquiry even if the state court addresses only one. Since this issue did not impact the Court's ruling, the Court will not issue a certificate. Rule 11(a), Rules Governing Section 2254 Cases.

**IT IS HEREBY ORDERED THAT** Norquay's petition is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 9th day of May, 2016.

**SO ORDERED:**

*/s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 7 -

Case 2:15-cv-00792-RTR   Filed 05/09/16   Page 7 of 7   Document 15